Case of the morning, No. 17-30867, Vantage Health Plan v. Willis-Knighton Morning, Your Honor. Hi, how are you doing? I'm well, thank you. Mr. Rosenberg. Correct, Judge Jones. Judge Barksdale, I hope you're not going to tell me who I might look like, because that would be scary at a lot of times. It would be more scary for them than for you. Yes, it would, Judge Jones. Beethoven comes to mind, but I'll just proceed with the argument, if that's all right with the Court. Yes. UMAD has appealed a ruling that ordered the unsealing of documents disclosing its trade secrets and sensitive nonpublic information in a lawsuit in which it is not a party. Now, the sole issue that we've raised before this Court is whether the district court used an improper standard when it ordered the immediate unsealing en masse of a large number of documents to one of our competitors, which then becomes available to all of our competitors because those documents would be put in the public record. I said that was the only issue, Your Honors. I know that we received a notice to address jurisdiction, so I'm mindful of that, and I'll do that in short order if it pleases the Court. But I'd like to go to the substance of our appeal, which is that UMAD produced documents in reliance upon a protective order for attorneys' eyes only. That protective order was then subject to a show-cause order. Vantage was supposed to then come forward and show cause why those documents which were under seal, which were not disclosed to our competitor, much alone to Vantage as one of our competitors, should be made part of the public record. That was its obligation. It failed that obligation. But I'm going to get to the criteria that the district court failed to adhere to because what it has resulted in is serious harm to UMANA as a result of the competitive advantages given to our competitors, which is not consistent with the law of this circuit or the law of any other circuit. You referred to it in the past tense, but I know our court granted a stay of the order converting from seal to redacted, so your competitors haven't seen it yet, have they? Well, Your Honors, they've seen it. It's not, Judge Barksdale, they've seen it, but it's not made part of the public record. That's correct. So you're correct. But we got a temporary stay from the district court, and then this court was good enough to give us a stay until we have this appeal, but they have those records. It's a question of whether they'll be part of the public record and whether there's any redeeming value to the public to see those records, much less for all of our competitors to see those records that are confidential and contain trade secrets as the affidavit we submitted as part of our submission to the district court substantiated. That affidavit was unrebutted. Well, it was awfully general, was it not? Well, Your Honor, I don't believe it was. We have two pages. If you're referring to the affidavit, the affidavit is two pages by one of our vice presidents. It's ROA 4699 in our brief. But it reflects that there is going to be substantial harm for the — if the disclosure of our confidential and proprietary information occurs, and that it would give a competitive advantage. That is, frankly, Judge Jones, I'm about to address that, but it really turned upside down the standards that this Court has used. And I'd like to get to that immediately, because what this Court has established is that first of all, the district court must determine whether the documents are judicial records. They were not. One document was a judicial record at the time of the hearing, one document. Subsequently, Vantage put in other documents. But at the time of these two days of hearings — Well, what she said was — I read portions of the transcript. What the judge said was, I'm going to get this out of the way now because I know it may come up later. What's wrong with a judge trying to discern the protectability of documents in advance of trial as opposed to a motion in limine or during the course of the trial? I'm glad you asked that, Judge Jones, because you're right. The district court said that. It's ROA 16732. And what she did, basically, was to prejudge the balancing test that this Court requires whether it's a matter of public interest or whether the private interest of nondisclosure outweighs any public interest. And what she did was to consider, apparently, try to consider relevancy, but she never considered relevancy. And what she did was just say, for exactly what you commented upon, Judge Jones, for the sake of efficiency, I'm going to deal with these other 49 documents, which, as your honors know, this Court has said, not only in the SEC case, but in the sealed document case of that — sealed search warrant case, that the documents first have to be in the record. They were not in the record at all. And yet the district court preempted all that and just forged ahead. I'm quite confused. What's a motion in limine? It seems to me a motion in limine to protect documents is, Judge, here are these documents that they've subpoenaed for trial. We do not want them to be introduced because they're confidential. How are those judicial records, whereas the things that you produced for eyes only are not . . . I think judicial records is sort of misleading here. Well, Judge, with all due respect, I mean, the fact is the court — the district court's show-cause order said, Vantage, you come in and show why these documents should be made part of the public record. That was their undertaking. They didn't do that. Number one, the documents weren't even in the public record. If it was in an in limine motion, Judge Jones, I agree with you, that would be, I think, a different type of cat. But it wasn't. It was under the protective order. It was a requirement that under a show-cause order, they established why there should be full disclosure, and they didn't do that. I understood that, and again, I'm certainly subject to being wrong, but I had understood that at stake are 50 documents, of which, really, there's a lot of duplicity, so really only 24, but we won't get worried about that, and that these were all being used on summary judgment motions, or were to be used on summary judgment motions. Judge Barksdale, first of all, they may have been intended for summary judgment motions, but that summary judgment briefing, one was — the first part was sealed. We didn't get to see that. The second part came later, and that's when the so-called 24 documents that they tried to reduce 50 to 24, but irrespective of the number, that occurred after the hearing, not before the hearing, which was important, because had they been able to say, this is why we need the documents, then they would have hit the relevancy standard, which is the very first criteria, and they didn't do that. I thought she found specifically that these bore on proving that there was some exclusionary conduct on the part of Vantage and — on the part of Willis-Knighton. Well, Judge Jones, I mean, first of all, the exclusionary conduct, so-called exclusionary conduct is a non-issue. It just is a non-issue. Well, I know they didn't sue Humana, and I'm not commenting on the validity of this case, which, from my limited experience in this area, is — may be questionable. But the point is, she said they were relevant to — she did say that, right? She said they were important to her. Right. She never concluded they were relevant to the judicial function, which is the first criteria, again, that this Court has set forth in its case law. And secondly, she never did any balancing between the public's need to look at these documents and Humana's need to keep those documents under seal. Well, then, what was the purpose of this lengthy hearing where they went page by page and line by line? Well, Your Honor, that's a very good question, because they went page by page, but they did not use the standards that this Court has set forth for determining whether a document should be put under seal or not. And failing to use the standards is what was the abuse of discretion, and that's the clear error committed by the district court. She could have spent five weeks doing all — looking at those documents, Judge Jones, but she used the wrong standards. They were not — number one, they were not in the record. Number two, there was no determination of public interest. And number three, she didn't — all she did was ask Humana, ask Humana's lawyer, me, is there — tell me what the harm is. Well, that's only one-sided. I mean, in fairness, she's supposed to assess the claim for disclosure, and she's only assessed half the equation. And then she concluded that there — that it should be disclosed because it's generally a matter of public interest. All lawsuits are a matter of public interest. That's just simply an overarching statement, which we don't disagree with. But the refinement is, when you get into competitor's documents and commercially sensitive materials, then you have to make these refined analyses. And that's what the district court just did not do. Do you object — suppose we were to reverse the district court and say that these documents will vacate her sealing order — or vacate — I don't know what we do — order that the documents be sealed. They could still come in at trial, could they not, if she reconsiders all this according to your standard? I didn't mean to interrupt you, Judge Jones. OK. Yeah, absolutely. They — they could, if — if, in fact, Vantage can establish that the public interest outweighs the interest of Umana for nondisclosure. That's the balancing test. They never — the district court never engaged in the balancing test at all. She just asked us, tell me what the harm is, and put the — the onus on us. And then it became, I'm only going to extract or redact the numbers in your document. I'm not going to redact the core materials, which are our trade secrets, the negotiations, the contracts themselves. That's the context of the trade secrets, the proprietary information that was very sensitive, that would give Vantage an advantage. Are all negotiations and contracts trade secrets as between competitors? I would say in this case they are because we've established that they would be trade secrets. We've established that they're proprietary. Vantage does not have access to them except through their attorneys, Judge Jones. And in this case, we've — we've established that Umana would be harmed if there was disclosure of those records. Not all negotiations, as a general proposition — By that two-page affidavit, you've established harm. Well, Judge Jones, if we had realized, frankly, that the burden was going to be upside down and we — it was going to go to us proving harm as opposed to Vantage proving public interest, and first at the outset that the documents would have to be in the public record, yes, then I think we could have a more detailed affidavit, and we would ask the Court to reverse and remand. And we'll provide a 40-page affidavit to Your Honor's satisfaction and to, we believe, the district court's satisfaction. Can you address jurisdiction? Jurisdiction, Judge Barksdale, simply is this. We have invoked the collateral order doctrine for jurisdiction. Judge Jones wrote the whole woman's case. Here's the problem I have with that. The authority — and it was sort of confusing because I was — that is under the rubric of Rule 45 for subpoenas to third parties. And I don't know whether you raised that here specifically or not, but they did in that case. And we had two underlying cases that said when it's the First Amendment, you do it And although we have — I mean, I'm sorry to expound here, but although we have cases on ceiling that they're — that say the collateral order doctrine applies, they're all pre-2010, I believe. Well, except, Your Honor, besides your case, the case of — by the — six different circuits have used the collateral order doctrine, and, in fact, the Second Circuit Mohawk. Yes, Your Honor. And as recently as last year, and then Your Honor's case, we've raised the collateral order doctrine at the outset, Judge Barksdale, in our — in our — in our brief. It was — In your statement of jurisdiction. Yes, that's correct. That's all you did. That's correct. But — and, Judge Barksdale, tellingly, it was not challenged by vantage. Now, I understand the Court, sui sponte, can look at jurisdiction as it has, but we've raised it, and we believe that a plethora of circuit decisions support the collateral order jurisdiction, and, in fact, had — had the Second Circuit said, you don't use mandamus, you use the collateral order doctrine for jurisdiction. I see my — What makes this case unique in that you can say to us, this doesn't open the floodgates to every discovery dispute involving business records comes to us on collateral appeal? Carve us out an exception. Why this would be an exception to the very understandable reasons we don't allow collateral appeals on discovery disputes? Judge Barksdale, I'll try to answer that quickly, because — You don't have to answer it quickly. I've asked you the question. I appreciate that. Let me — let me try to answer it as best as I can, sir. First of all, this is not a discovery dispute between two litigants. That's — we understand that. We're — I know you — and I don't mean to say the obvious, but this is a situation of — involving a couple of factors. It doesn't involve the merits of the case, per se. If it — the issue as to the disclosure of the documents was decided by the district court, so it's conclusive. But most importantly, Judge Barksdale, if we do not have an opportunity for appellate review under the collateral order doctrine, we've lost our rights for any appellate review, because the documents are put in the record, and any appellate review would be futile. And that's what the courts have consistently said, which is why, particularly for a non-party, it allows the collateral order doctrine to be used for jurisdiction. It's a different ballgame if the litigants are involved, so you're not dealing with multiple appeals. I understand that. You're not dealing with issues related to discrete discovery disputes. I understand that as well. But this is a situation where, if the Court does not exercise jurisdiction on the collateral order doctrine, then the case is over. I'll just throw out one more thing to make this complicated. In researching for that case, I looked at Rule 45C, I think it was, decisions that the Fifth Circuit had, and we seem — because I think this falls generally under Rule 45, but nobody's explicitly put it that way — we have a split in what we consider appealable collateral orders under Rule 45, and you can go and check this out further. But I think the split centers around whether the plaintiff was asking for the materials in which — and this is just for discovery, not for sealing — but the plaintiff was them not produced, in which case we have said those are appealable, whereas the third party was asking not to produce, and the Court ordered them to produce anyway, and we've said those are not appealable, as if the whole thing turned on the interests of the plaintiff. And I'm not quite sure how those coexist with sealing orders, but anyway, you can ponder it. JUSTICE BREYER. Well, I'll ponder it. JUSTICE GINSBURG. I mean, obviously not for rebuttal, but — JUSTICE BREYER. No, I understand, Your Honor, but I would ask this, if the Court would allow us. Since the court sua sponte just raised this issue last week, although we did address the collateral order doctrine in our brief, as Judge Barksdale acknowledged, if there's a question, and there obviously is, that we be allowed to address that issue in a letter brief after oral argument. JUSTICE GINSBURG. I can file letter briefs. JUSTICE BREYER. Thank you, Your Honor, and my time is up for initial argument. JUSTICE GINSBURG. And I may be totally off-base about Rule 45 versus sealing, and if that's so, it can be a very short — JUSTICE BREYER. I would never say you are off-base, Judge Jones, but I might disagree with you. JUSTICE GINSBURG. Yeah. JUSTICE BREYER. For the record, we asked — we alerted this — you to this on the 27th of August. That's not just last week. That's almost two weeks ago. JUSTICE BREYER. I'm sorry, Judge Barksdale. That's correct. It was the end of August. We did get — I'm not questioning the short notice we got. It just seemed like it was yesterday. And I had some family issues, but I apologize for that misstatement. JUSTICE KENNEDY. While we're on that question, Judge, when do you want those letter briefs in? JUSTICE GINSBURG. A week is fine. JUSTICE KENNEDY. A week. JUSTICE GINSBURG. Yes, sir. JUSTICE KENNEDY. Thank you, Your Honor. JUSTICE KENNEDY. Mr. Kelley. MR. KELLEY. Good morning. May it please the Court, I'm Chris Kelley here on behalf of Vantage Health Plan. I'd like to talk with the Court about the merits briefly before I go to jurisdiction. But on the other hand, if the jurisdictional threshold issues are important enough and troubling enough, that perhaps I can just give you a quick headline on the merits, which is that, as I think the Court's question suggested, what Humana is challenging here is a sensible exercise of the trial court's discretion to run its docket, to deal with ceiling issues as they come up in a sensible way, and to deal specifically with the problem that was created by Humana's late production of these specific documents, which related very clearly to one very specific issue, which, as the Court noted, Judge Foote found was very important to the case, and which forms a significant part of the briefing on Willis-Knighton's motion for summary judgment against Vantage. JUSTICE SOTOMAYOR. Let me ask you a threshold question. Why is it that you got to seal your competing motions for summary judgment, but you're saying their stuff has to go into the record? MR. KELLEY. Your Honor, you're touching on an important point, which Judge Foote addressed. The parties oversealed their dispositive motions and the Daubert motions. There's no doubt about that. JUSTICE SOTOMAYOR. It's still under seal, right? MR. KELLEY. No, Your Honor. JUSTICE SOTOMAYOR. But it's not under seal. MR. KELLEY. That's right. In fact, once the opposition briefs on S.J. and on Daubert went in, Judge Foote said, stop the music, and held a conference where she amended the protective order and set this new process for sealing going forward. And so that was, I think, June 28th of last year. JUSTICE SOTOMAYOR. That's going forward. But are your original motions still under seal? MR. KELLEY. No, they are not under seal now, because after that two-day, page-by-page, line-by-line hearing that the Court held in September and October of last year, in November, I think it was, over the first 10, 12 days of November, the parties refiled their S.J. and Daubert briefs in public pursuant to the Court's orders at the sealing hearings. So everything is in the public file on S.J. at this point, but for the supplemental briefing, which Vantage filed in November of that year on this specific issue of the documents, which we brought to the Court's attention, in that group of 49 documents, or 24, as Judge Barksdale said. So really, the only thing left is this, at issue, is this supplemental briefing. Now, on jurisdiction, though, and I'm a little bashful about this, because this is something we, in part, should have identified coming in, rather than simply accepting that because Humana is a third party, that collateral order jurisdiction existed. The Court's letter identified a very serious issue with the Court's jurisdiction over this appeal. And in fact, there are two issues at stake involving two of the three Cohen factors. The first one, the idea that the underlying order conclusively resolves the issue, is not at issue here. It's the second and third. The second, as the Court knows, is that the order being appealed from resolves an important issue that's entirely separate from the merits of the underlying litigation. And the third is that the order is effectively unreviewable. As you know, importance is a concept that's woven into the second and third of these Cohen factors, literally in the second, but certainly over time, as we've seen in cases like Mohawk. Well, don't tell us the theory. We know the theory. What case? Are there any cases that would say this is not appealable? I think so, Your Honor, and that starts with Whole Woman's Health. Whole Woman's Health tells us, by implication, what Humana is lacking here. And that's because importance entails not only the inherent importance of a particular issue that's at stake, but also the vulnerability of it, whether the law on that issue is settled or not. The idea that collateral order jurisdiction is designed to address issues that are not just inherently important, but ones that are undeveloped, that are unsettled, and thus vulnerable to a degree of error in the trial court has been in the case law and collateral order jurisdiction since Cohen. But we see it most clearly in Mohawk and then in the Court's order as to Whole Woman's Health. What we had in Whole Woman's Health, as you know, was the very strong First Amendment interest of the Texas Conference of Catholic Bishops and a case that, as the Court said, was practically sui generis. If I remember right, the Court said that neither the Court nor the parties had found any cases on point to deal with the issue that was there. That's certainly not the case here. As you know, we have a large body of case law on dealing with ceiling issues. Humana itself has told the Court multiple times in its brief that there's a well-established structure for dealing with ceiling issues, and there's no question that courts regularly deal with ceiling issues presented by parties and by third parties. And yet there's no track record that Humana can point to of any widespread uncertainty or error about the standards that are brought to bear on looking at the business records of third parties in connection with ceiling motions. So that point, which the Court brought out in the Whole Woman's Health case, is also very present in Mohawk Industries, which Whole Woman's Health in turn cites, mentioning that familiarity with issues heightens courts' ability to review materials for which privilege is claimed, mitigates the potential for lower court discovery errors, and lessens the novelty of the issues. That is something that Mohawk dealt with in great detail. Dealing with what everyone acknowledged was a very serious issue of attorney-client privilege, the Court made clear that it wasn't besmirching the significance of the attorney-client interest that was at stake in Mohawk. The point was, is it unsettled enough that there is a serious reason for concern that the interest protected by the attorney-client privilege would be sacrificed if there was not the access to the collateral appeal? And to that end, what we saw the Supreme Court observe in Mohawk was that most district court rulings on attorney-client privilege involve what the Court called the routine application of settled legal principles, just like here with Sealing. They are unlikely to be reversed on appeal, just like with Sealing, particularly when they rest on factual determinations for which appellate deference is the norm. All right. Well, cut this short in a few words on effectively unreviewable. Sure. What that boils down to is that because, in the recent case law, importance and the unsettled aspect of importance is woven inextricably into effectively unreviewable on appeal, because the law here is settled on Sealing, there's no significant risk. So in other words, effectively doesn't need to be reviewed. That's about what — that's about it. That's your position. That's about it. In this instance, as in Mohawk, the likelihood of any given court, including — Well, that's just — I mean, you know, whether or not it's determinative, I don't think that's a very serious argument, because if you're a third party, you're not going to be able to get appellate review, period. And we have a — even when things are subject to very deferential appellate review, they're still subject to appellate review. So — That's the tradeoff, Your Honor, and I recognize it. On the other hand, if — I understand your point, right? That would tend to suggest that third parties, because they've admittedly faced this conundrum — Well, that's the way — well, as I say, our Court has — seems to have even been split on that vis-à-vis Rule 45 in the past. So anyway, you can look into it further. One other point on jurisdiction, which has to do with something that you heard my friend Mr. Rosenberg talk with you about this morning, which is that Humana's argument challenging Judge Foote's order — and, in fact, the argument that it put to Judge Foote in the first place — has to do with the merits of the underlying litigation. They're arguing that one reason that these documents don't qualify in Humana's view as judicial documents is because they're not relevant to the case. Well, I don't know why you made Humana an unindicted co-conspirator, but they say the premise of your argument and her decision is slightly off-base, because there was not, in fact, an exclusive contract between Humana and Willis-Knighton in this period. Well, that's their argument, Your Honor. Well, is it true or not true? No, it's not true. And the documents that are before the Court show that that's not true. But what that boils down to, of course, is an argument about the facts that are before the trial court on summary judgment. And Humana's argument here is inviting the Court to preempt the issue that's squarely in front of Judge Foote on summary judgment, whether Vantage adequately pled this issue in the amended complaint, and then secondly, assuming that it did, whether this alleged agreement is a violation of the antitrust laws. Those two issues are in Humana's briefs here before this Court. And as Humana frankly says in that brief, that's what Willis-Knighton is arguing on summary judgment. So there's no getting around the fact that in a significant way, Humana's appeal here is bound up with the merits of the underlying case in front of Judge Foote right now. That's it on jurisdiction. On the merits, what I think the Court's questions to Mr. Rosenberg recognized were that, of course, in dealing with sealing issues, whether it's in a motion to seal or a rule to show clause, as was the case in this instance, the issue is left to the Court's discretion. The Court here utilized that discretion, establishing very clearly a process for reviewing the documents for an issue, in advance notifying the parties and third parties as to what the drill would be. Humana had ample notice of what would happen and of its opportunity to produce facts. Well, it looked to me, just skimming through that transcript, that this was some sort of, there were several companies involved here. That's right. And several of them were making a pitch to seal documents, right? They were, Your Honor. And sometimes in a circumstance like that, it seems to me the specifics get lost in the course of the Court's considering everything. Well, there's certainly, the more parties, I certainly agree with you, all other things being equal, the more parties, the more potential there is for confusion, but that wasn't the case here. No other party suggested that there was a problem with the burden that was being articles of information or materials ought to be redacted. Humana alone came to court twice, not just the first time in mid-September, but then in mid-October. What's your best, what's your best reference to the record where Judge Foote acknowledged that she was complying with our rules on sealing, in other words, balancing the public interest and confidentiality? Well, Your Honor, I think that the best spot is at the very opening of the September 15th hearing. I'm looking for the record on appeal site here, and I think I may be able to have it for you in just a moment. But in that, at the outset of the hearing, she very carefully read through the standard that was going to govern the hearing. I believe. Well, if you're looking at, if you have it highlighted on the transcript, you can give it to us. Okay. You know, the courtroom deputy, but. I'll be glad to do that, because I think that the page site that I may have has to do with the court's resolution in principle, which is at 5389. But an important point is that in that recitation, what the court recited in conformance with the applicable case law, and very much in conflict with what Humana is now putting to this court for the first time, not something that it raised with Judge Foote, is that there is this presumption, or presumption which in Holy Land Foundation, this court identified as strong in conformity with other circuits, a strong presumption of the right of public access to litigation documents. And that presumption is what parties have to overcome by showing evidence of a countervailing interest, which is at risk, which would outweigh that presumption. There's no case law that I'm aware of, and it certainly hasn't been cited by Humana. Trade secrets are trade secrets. Are these trade secrets? There's no proof, Your Honor, that these are trade secrets. Well, there's an affidavit that says they're confidential negotiations and trade secrets. Well, you're right, Your Honor. There's about eight paragraphs of verbiage of generic. And did the judge rule on that specifically? She did refer to that in the course of Humana's showing. And of course, there's also the one paragraph in Humana's brief in opposition to the motion to rule clause, which is on the same level of genericness and fuzziness. And then if the true proof of the pudding, Your Honor, is in the sealed portion of the transcript of the September hearing where Humana's counsel took its best swing at demonstrating some level of sensitivity to the information that was before the Court and missed. It produced nothing. It offered nothing other than generalities about the rough and tumble of business negotiations and how somebody could look at these things and get an idea of what our strategies are, but never pointed to anything specific in any of these documents that actually was truly sensitive that could give anyone some kind of insight that would be the source of a competitive advantage over Humana. Nothing. They had repeated opportunities to do that, document after document after document. And the sealed portion of the transcript really is the zenith or perhaps the nadir of that process where Humana had the opportunity to produce facts that would give the Court a basis for assessing its interest against the strong presumption of public access. Well, let's just say, well, I understand your strong presumption argument, but let's just say, for the sake of arguendo, that it was, the burden is, as he says, which is public interest versus private claims. So she didn't balance it that way, right? She did not scrutinize the nature of the public interest in documents relating to summary judgment. That's right. Now, on the other hand, of course, as some courts have found, that public interest does vary with the posture of the case and the relationship of the documents to the specific pleading or filing that they're related to. And here, we're talking, of course, about summary judgment. We're talking about a dispositive motion. And Judge Bryson's opinion in, well, in fact, he has a series of opinions from the Eastern District of Texas, where he was sitting, the one, I think, that we cited as European, where he notes, I think, referring, citing to a Seventh Circuit case, Center for Auto Safety, that the interest, this presumption of interest is at its greatest when we're talking about dispositive motions, because, of course, they're the public interest in learning about what underlies, what buttresses the Court's resolution, ultimate resolution of the cases is very strong. And the reasoning there is something that we'd certainly urge on the Court. So even if there was any need to weigh or assess or identify the precise nature of the interest of the presumption here, in fact, the law does that for us. Judge Foote did that in the course of her consideration of these efforts to seal the case, and used her discretion, based on the facts that were before her, to determine that the public interest had not been overcome. Your Honors, I see my yellow light is on, but unless there are any other questions, I would end by asking the Court to either, well, if it does determine that it has jurisdiction to hear this appeal, then to affirm Judge Foote's order. I should, I'm sorry, I should also mention, just before I go, that, as you know, this is one of the other artificial elements of this appeal, is the fact that the documents that did not get filed with our supplemental filing are not going to get filed, as we've committed to the Court. Those ones, other than the 12 that did get filed, obviously we don't need. As Judge Barksdale noticed, there's a lot of duplication among those documents. Well, but she said, but, I mean, part of what they're arguing is that you could offer them a trial. Well, we've committed, well, that's certainly true, but that would be true regardless of the issue as to sealing in connection with summary judgment, and that's the issue that's before the Court. But the fact is that as a practical matter, we found our best documents and we put them in. They're the ones that we intend to live with. Okay. Thank you, Your Honor. Thank you. Mr. Rosenberg? The District Court may have articulated at the outset some general principles about sealing and disclosure, but it failed to apply those principles. That's the crux of our appeals, Your Honor. It failed to apply them. It could recite them, but it never applied each one, and particularly, as Counsel for Vantage just mentioned, the District Court never assessed the public interest. There has to be a compelling public interest. This Court has said, as the Supreme Court has said, the public's common right of interest to access documents, it's not absolute. There are exceptions. And that's the reason you have these balancing tests. The District Court never applied that balancing test to our trade secrets, never rebutted the affidavit of Mr. Blaylock that they say is skimpy, but we've addressed that. I'm not . . . I know I'm going to get another chance to address jurisdiction, so as Your Honors have given us . . . kind enough to be giving us that opportunity, we'll do that. But I do want to refer to a couple of quick points. First of all, Judge Barksdale, as you've recognized, the motions for summary judgment pleadings, even though they were done after our hearings, those are complete. And yet, the District Court said, I'm going to consider all 49 of these other documents that have never been filed, and my ruling is going to apply to those. How could she possibly consider relevancy, which is a core criteria for this Court to consider in weighing the privacy or the protection for nondisclosure against the public interest, if she doesn't have relevancy? She didn't have it. It was never presented to her. And that's the reason that we asked the Court to reverse and remand, to make her give those specific findings, because as this Court well knows and has articulated time and time again, these types of issues are case-specific. They're factual-specific. This is not just general principles that you can apply. And those specifics were not addressed, and it, quite honestly, deprived this Court of a meaningful opportunity for appellate review, because all we had were conclusory statements by the District Court that I don't believe you, Hamana, were harmed or will be harmed by the disclosure of those documents. Those were purely conclusory and never considered the import of our trade secrets in the contracts and the negotiations and other information that we'd given, in addition to the Blaylock affidavit, which went uncontradicted. But let me just also address one other quick point, which is this. I think Judge Jones, as you recognize, Hamana's not mentioned once in 80 pages of Vantage's complaint, not once in the 233 paragraphs, not mentioned as a co-conspirator. All they have said to this Court in an effort when they concluded their brief is that, well, we could amend our pleading by briefs. That's baloney. That is not the case law. The case— Well, do you want them to join your client as a defendant, and then they'll get more complete discovery? Your Honor, I'm not inviting them to join my client. I know my partners would like me to have more work, but I'm not asking them to join Hamana, nor do I believe they have a claim against Hamana. But as Your Honors know, when the Supreme Court issued Bell v. Twombly, it made it very specific. You need to have the who, what, and when, and the details of an antitrust claim when you make one. They haven't even mentioned us in their complaint. They haven't mentioned us when they got the documents that they claim create this so-called exclusionary issue that is so important. That's never been part of their pleadings. And if it's not part of their pleadings, Your Honors, then it simply cannot be relevant to forcing the disclosure of our confidential documents. That is, I believe, the sinquanah of what this Court has ruled in prior cases. Now... Now, goodbye. I will do that, Judge Jones. Au revoir. I won't belabor it anymore. I'll take that hint, but we will submit the jurisdictional submission. I said au revoir. I understand. Thank you for the departure. A greeting, Judge Jones. Thank you, Your Honors. Oh, the red lighting. Come on. I saw that, Judge. Okay.